Rodney Fussell, defendant-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Criminal Division, Case No. CR-350849, in which defendant-appellant was convicted on ten counts of rape, one count of gross sexual imposition and one count of rape of a victim under the age of thirteen years. Defendant-appellant assigns four errors for this court's review.
Defendant-appellant's appeal is affirmed in part, reversed in part and remanded.
On May 22, 1997, defendant-appellant was charged by the Cuyahoga County Grand Jury in a twelve count indictment. The first ten counts of the indictment charged defendant-appellant with the rape of his minor daughter, in violation of R.C. 2907.02. The eleventh count of the indictment charged defendant-appellant with gross sexual imposition upon his minor daughter, in violation of R.C. 2907.05. The twelfth and final count of the indictment charged defendant-appellant with the rape of his minor daughter, who was under the age of thirteen years at the time of the alleged offense, in violation of R.C. 2907.02. On June 17, 1997, defendant-appellant was arraigned, whereupon a plea of not guilty was entered as to all twelve counts contained in the indictment.
The case came on for a jury trial on September 30, 1997. Prior to commencement of opening statements, the state moved to prohibit the admission of evidence or testimony relating to the prior documented sexual molestation of defendant-appellant's minor daughter by her former step-father, Marcus White. White had admitted to sexually molesting the minor daughter, as well as his own son, and is currently incarcerated as a result. It is undisputed that the minor daughter suffered behavioral and psychological difficulties due to her experience and received extensive psychological treatment for a period of time after White's conviction. The trial court initially granted the state's motion in limine based upon Ohio's Rape Shield Law, R.C.2907.02(D).
The first witness for the state was Annette Hollins, the mother of the alleged victim. Ms. Hollins testified that her minor daughter, who was born on June 21, 1982, was fathered by defendant appellant. Ms. Hollins and defendant-appellant were never married. Ms. Hollins testified further that defendant-appellant had virtually no contact with the minor daughter until she reached approximately seven years of age. At that point in time, defendant-appellant and the minor daughter became reacquainted and defendant-appellant began to take an active role in her life. This included spending nights and weekends together at defendant appellant's residence. This practice continued after defendant appellant married Zalaunda Fussell and moved into her residence located at 4375 Parkton Avenue in Warrensville Heights, Ohio.
Annette Hollins maintained that, sometime in mid-1996, this situation began to become a problem. Increasingly, defendant appellant would refuse to bring the minor daughter home causing her to miss school. Arguments ensued between defendant-appellant and Ms. Hollins regarding his behavior with their daughter. One such argument allegedly ended with defendant-appellant striking Ms. Hollins and telling her to never question him about his daughter again.
During this period, Ms. Hollins testified that she became concerned over inappropriate sexual comments made by defendant appellant to the minor daughter, as well as inappropriate touching of the minor daughter. In Ms. Hollins opinion, defendant-appellant was often encouraging rebelious behavior by giving the minor daughter gifts and money. The minor daughter started doing poorly in school at this time.
On March 19, 1997, Annette Hollins testified that defendant appellant unexpectedly came to her apartment and took the minor daughter over to his house in Warrensville Heights. That evening, Ms. Hollins testified that she was told by defendant-appellant that he would not be bringing the minor daughter home until the following day.
The next day, when the minor daughter returned home, she appeared to be upset and was crying. Soon thereafter, Ms. Hollins discovered that defendant-appellant had been engaging in sexual conduct with their minor daughter. Ms. Hollins testified that she took the minor daughter to Rainbow Babies and Children's Hospital for an examination. The hospital staff then notified the Warrensville Heights Police Department.
The second witness for the state was Dr. Kelly Joyce of Rainbow Babies and Children's Hospital. Dr. Joyce testified that she conducted an examination of the minor daughter at the time she was brought into the hospital. In addition, a rape kit was completed. Neither the examination nor the subsequent rape kit revealed evidence of a sexual assault. Dr. Kelly testified that such findings in sexual assault cases are not uncommon.
At this point in the proceedings, the trial court reversed its prior ruling on the state's motion in limine. (T. 367.) The trial court determined that the defense could question the mother of the victim regarding the prior sexual assault of the victim by Marcus White. The trial court found that this line of questioning would be permitted, not to challenge the credibility of the minor daughter, but to test the credibility of the witness as to her contention that the minor daughter's behavioral problems were caused by defendant-appellant's actions not the prior documented sexual abuse.
Consequently, Annette Hollins was recalled to the stand. On further direct, Ms. Hollins stated that her minor daughter had exhibited behavioral problems in the past due to the sexual molestation by Marcus White. However, Ms. Hollins maintained that these problems had abated for approximately two or three years before resurfacing in 1996-97.
The third witness for the state was the victim, defendant appellant's minor daughter. She testified that on March 19, 1997, defendant-appellant came over to her house to take her shopping. Rather than go shopping, defendant-appellant took her over to his house in Warrensville Heights. Defendant-appellant's wife, Zalaunda, was present in the home at the time along with Zalaunda' s disabled father who lived in the home as well.
The minor daughter testified that she completed her homework, watched television and ate a sandwich. Later in the evening, she went upstairs to defendant-appellant's bedroom which he shared with his wife. The minor daughter also slept in the same bedroom on a cot that was placed at the foot of the bed. On the night in question, the minor daughter went to sleep at approximately 11:00 p.m. Defendant-appellant and his wife were also in the bedroom at that time.
During the night, the minor daughter testified that she was awakened by defendant-appellant's hand under her bra. Defendant appellant proceeded to have intercourse with her for approximately five minutes. He then returned to his bed where his wife was still sleeping. The next day, the minor daughter returned home and eventually told her aunt about the incident.
The police were notified and an investigation ensued during which the minor daughter disclosed that defendant-appellant had first raped her in the fall of 1994 when she was twelve years old. She maintained that she had been raped approximately thirty times by defendant-appellant in total from the fall of 1994 to March 19, 1997.
The final three witnesses for the state were Officer Michael Spuzzillo, Detective Daniel Bambrick and Detective Michael McKeon of the Warrensville Heights Police Department. Each witness testified regarding their respective involvement in the ensuing investigation of defendant-appellant.
At the conclusion of the state's case, defendant-appellant moved for judgment of acquittal pursuant to Crim.R. 29. The trial court denied the defense motion.
Defendant-appellant's case consisted of the testimony of one witness, Zalaunda Fussell, defendant-appellant's wife. Mrs. Fussell testified that she had known defendant-appellant's minor daughter since she was six years of age and always felt that they had a good relationship until this incident occurred. On the night of March 19, 1997, Mrs. Fussell stated that she was at home the entire evening taking care of her father who had numerous health problems including diabetes, which had led to the amputation of both legs, and kidney failure. It was Mrs. Fussell's testimony that she was awake most of the night due to her father's poor health and did not witness any inappropriate behavior by defendant appellant toward his minor daughter at any time. The defense then rested.
Defendant-appellant renewed his motion for judgment of acquittal at the close of the evidence. The trial court once again denied defendant-appellant's motion.
After deliberations, the jury returned a verdict of guilty as charged in all counts of the indictment. The trial court ordered that defendant-appellant be referred to the Cuyahoga County Probation Department for the purpose of conducting a pre-sentence investigation and report.
On November 19, 1997, one day prior to sentencing, defendant appellant filed a motion for a new trial pursuant to Crim.R. 33. Defendant-appellant maintained that he had obtained newly discovered evidence which called into question the truthfulness of Ms. Hollins testimony, as well as that of the minor daughter. The trial court denied defendant-appellant's motion for a new trial on the day of sentencing.
On November 20, 1997, the trial court sentenced defendant appellant to ten years on counts one through ten of the indictment; twelve months on count eleven of the indictment; and life imprisonment on count twelve of the indictment. All sentences were ordered to be served consecutively. The trial court also determined that defendant-appellant should be classified as a sexual predator pursuant to R.C. 2950.01.
On December 18, 1997, defendant-appellant filed a timely notice of appeal from his judgment of conviction and sentence of the trial court.
Defendant-appellant's first assignment of error states:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ITS APPLICATION OF OHIO REVISED CODE SECTION 2907.02(D).
Defendant-appellant argues, through his first assignment of error, that the trial court improperly applied Ohio's Rape Shield Statute as a bar to evidence concerning the prior documented sexual abuse of his minor daughter by her former step-father, Marcus White. Defendant-appellant maintains that the probative value of the disputed evidence not only outweighed any attendant prejudice, but was clearly imperative to defendant-appellant's defense. Defendant-appellant maintains further that the trial court's mid trial reversal of its prior ruling regarding the admissibility of evidence of the prior molestation of the victim did not cure the error or overcome the initial harm to defendant-appellant's case.
Ohio's rape shield statute, R.C. 2907.02(D), is intended to guard the victim's sexual privacy, to protect the victim from undue harassment and to discourage the tendency in rape cases to put the victim on trial. State v. Gardner (1979), 59 Ohio St.2d 14, 17,391 N.E.2d 337. The relevant part of R.C. 2907.02(D) states:
 Evidence of specific instances of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory prejudicial nature does not outweigh its probative value.
R.C. 2907.02(D) exceptions are very limited. A defendant is required to show that the victim's past sexual reputation or activity is necessary to prove the origin of semen, pregnancy, disease or past sexual history with the defendant. Even then, the trial court may exclude such evidence if the court finds that it is irrelevant or is prejudicial. State v. Ashcraft(Sept. 28, 1998), Butler App. No. CA97-11-217, unreported. However, where the contested evidence is submitted merely to impeach the victim's credibility, such evidence is prohibited by the rape shield law.State v. Ferguson(1983), 5 Ohio St.3d 160, 450 N.E.2d 265.
The trial court is within its sound discretion to determine the relevancy of the evidence that the defendant seeks to enter in a rape prosecution and to determine the manner in which the rape shield law is applied. State v. Guthrie(1983), 86 Ohio App.3d 465,467. On appeal, a defendant must, therefore, demonstrate that the trial court abused its discretion when it excluded evidence of prior sexual abuse. Abuse of discretion means more than an error of law or judgment; it implies that the trial court's attitude was arbitrary, unreasonable or unconscionable. State v. Adams(1980)62 Ohio St.2d 151, 157, 404 N.E.2d 144.
In the case sub judice, defense counsel maintained that evidence of the prior documented sexual abuse of the victim should have been admissible from the outset of trial since it was being offered, not to challenge the victim's credibility as a witness, but to demonstrate that the behavioral problems generally associated with sexual abuse which had evidenced themselves with the victim herein were caused by the victim's prior sexual abuse experiences and not defendant-appellant's alleged abuses. In essence, the evidence was being offered for the purpose of establishing an alternative explanation for the victim's behavioral problems.
Had the trial court adhered to its initial ruling excluding all evidence of prior sexual abuse, it is conceivable that an abuse of discretion may have occurred. See In re Michael(1997),119 Ohio App.3d 112, 121; State v. Ungerer(June 5, 1996), Ashland App. No. 95CA0A1125, unreported at 4; cf. State v. Smelcer(1993).89 Ohio App.3d 115, 623 N.E.2d 1219. However, the trial court's reversal of its decision after the state's first two witnesses cured any possible error by the trial court. A review of the record demonstrates that defense counsel was afforded a full opportunity to cross-examine Ms. Hollins as to the prior sexual abuse of the victim. In addition, defendant-appellant discussed the prior sexual abuse and its possible ramifications at length during closing argument. Accordingly, this court finds that, after a review of the record in its entirety, the trial court did not abuse its discretion as to the admissibility of the evidence concerning the prior sexual abuse of the victim by someone other than defendant-appellant. Ashcraft, supra.
Defendant-appellant's first assignment of error is not well taken.
Defendant-appellant's second assignment of error states:
 II. THE INASSISTANCE (SIC) OF TRIAL COUNSEL PRECLUDED APPELLANT FROM RECEIVING A FAIR TRIAL AND IT AFFECTED THE OUTCOME OF LITIGATION TO APPELLANT'S IRREPARABLE HARM.
Defendant-appellant argues, through his second assignment of error, that trial counsel's performance was constitutionally deficient. Specifically, defendant-appellant refers to the following instances of alleged ineffectiveness: defense counsel's failure to have the clothing that the victim was allegedly wearing at the time of the rape on March 19, 1997 scientifically tested; defenses counsel's failure to cross-examine the victim regarding the date of the first alleged rape; defense counsel's failure to retain a psychological expert to testify regarding the psychological condition of the victim; defense counsel's failure to subpoena records from the Department of Children's and Family Services and the Berea Children's Home for purposes of impeachment and cross-examination; defense counsel's general incompetence during trial; and defense counsel's failure to request a jury view of the scene of the alleged rape.
In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington(1984), 466 U.S. 668,State v. Brooks(1986), 25 Ohio St.3d 144.
In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith
(1985), 17 Ohio St.3d 98; Vaughn v. Maxwell(1965), 2 Ohio St.2d 299.
The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley(1989),42 Ohio St.3d 136, that:
 When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness. State v. Lytle(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington(1984), 466 U.S. 668. * * *
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981)." Strickland, supra, at 691. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
State v. Bradley, supra, at 141, 142.
Initially, defendant-appellant maintains that trial counsel was ineffective for failing to obtain the victim's clothing allegedly worn on the date of the last rape. Specifically, defendant-appellant argues that the clothing should have been tested to determine if semen or any other physical evidence of the rape was present. A review of the record fails to demonstrate that defendant-appellant was prejudiced by trial counsel's failure to obtain and submit the clothing into evidence. Had the clothing been tested and a positive result occurred, it would have harmed defendant-appellant's case. Clearly, the decision comes under the purview of trial tactics which does not constitute ineffective assistance of counsel. State v. Varner(Sept. 14, 1998), Stark App. No. 98CA00016, unreported.
The second instance of alleged ineffective assistance of counsel was the purported failure of trial counsel to cross-examine the victim regarding the date of the first alleged rape. It is defendant-appellant's position that the victim's trial testimony was inconsistent with a prior statement she had made to the Warrensville Heights Police. It is well established that a decision regarding the scope of cross-examination is also a matter of trial strategy. State v. Nobies(1995), 106 Ohio App.3d 246,272-273, 665 N.E.2d 1137. Given the victim's trial testimony regarding her age and the fact that the victim began her prior statement to the police by stating that she was twelve years old at the time of the first rape, it cannot now be said that trial counsel was ineffective for attempting to avoid such testimony.State v. Spriggs(Dec. 18, 1998), Montgomery App. No. 98-CA-19, unreported.
Defendant-appellant contends further that trial counsel was ineffective for failing to retain an expert witness to testify regarding rape trauma syndrome generally as well as the victim's specific psychological condition. It is well established that decisions regarding the calling of expert witnesses are also within the purview of defense counsel's trial tactics. State v. Steckel
(Sept. 21, 1989), Cuyahoga App. No. 52594, unreported, citing Statev. Hunt(1984), 20 Ohio App.3d 310. Clearly, this omission does not constitute ineffective assistance of counsel.
Defendant-appellant next argues that defense counsel's failure to subpoena records from a variety of governmental sources constituted ineffective assistance of counsel. Specifically, defendant-appellant maintains such records would have demonstrated another reason for the victim's behavioral problems other than defendant-appellant's actions. In order for such a failure to constitute ineffective assistance of counsel, a defendant must demonstrate that the subpoenaed information would have been of significant assistance to the defense. State v. Reese(1982),8 Ohio App.3d 202, 203, 456 N.E.2d 1253. Defendant-appellant has failed to demonstrate that the information would have been of significant assistance to his defense in this case. In fact, a review of the trial transcript demonstrates that much of the disputed information was subpoenaed and made available to defense counsel. Accordingly, this alleged omission does not constitute ineffective assistance of counsel.
Defendant-appellant maintains further that defense counsel's general overall incompetence during trial precluded a fair trial. Specifically, defendant-appellant argues that trial counsel's opening statement was deficient, the failure to object to leading questions, as well as hearsay testimony, was inexplicable as was the failure to voir dire the victim. Defendant-appellant argues further that defense counsel's case-in-chief was also lacking. A review of the record fails to support defendant-appellant's assertions. More importantly, defendant-appellant has failed to demonstrate that, but for the alleged ineffectiveness of trial counsel, the outcome of the trial would have been different.
Finally, defendant-appellant maintains that trial counsel's failure to request a jury view of the scene of the March 19, 1997 rape was also ineffective. It is defendant-appellant's position that a jury view would have further demonstrated the implausibility of the victim's version of the events. Whether this request would have been successful is highly problematic since such matters are left entirely to the discretion of the trial court. State v. Zuern
(1987), 32 Ohio St.3d 56, 58. Given the fact that the jury was presented with ample testimony concerning a somewhat uncomplicated crime scene, this court cannot now say that trial counsel was ineffective for failing to request a jury view. State v. Broden
(Dec. 26, 1991), Summit App. No. 15119, unreported.
For the foregoing reasons, defendant-appellant's second assignment of error is not well taken.
Defendant-appellant's third assignment of error states:
 III. OHIO REVISED CODE SECTION 2950.09 IS UNCONSTITUTIONAL AS APPLIED TO RODNEY FUSSELL.
Defendant-appellant argues, through his third assignment of error, that R.C. 2950.09, which the trial court applied to determine that defendant-appellant should be classified as a sexual predator, is unconstitutional since it violates both the United States and the State of Ohio Constitutions in that it is an ex post facto law. Defendant-appellant argues further that, even if the statute is constitutional, the trial court's determination that defendant-appellant be classified as a sexual predator was not supported by clear and convincing evidence as required by the statute.
In the case sub judice, after a complete review of the record and the briefs of counsel, it is apparent that defendant appellant's challenge to the constitutionality of R.C. 2950.09 is without merit in light of the recent Ohio Supreme Court decision inState v. Cook(1998), 83 Ohio St.3d 404, as well as this court's interpretation of the Cook decision in State v. Ward(Jan. 28, 1999), Cuyahoga App. No. 72371, unreported. In the above cited cases, it was determined that the notification, registration and verification provisions of R.C. 2950 are remedial in nature rather than punitive and, therefore, R.C. 2950 is constitutional in scope as well as application. See State v. Jefferson(Feb. 18, 1999), Cuyahoga App. No. 72400, unreported.
Defendant-appellant's contention that the trial court's sexual predator determination was not supported by clear and convincing evidence is, however, supported by the record. R.C. 2950.01(E) defines sexual predator as "a person who has been convicted of or pled guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.09(B) provides that a sexual predator hearing may be conducted as part of the sentencing hearing, but that a defendant still must be provided with notice of such a hearing, as well as the opportunity to present evidence and cross-examine witnesses. The statute states:
 The judge shall conduct the hearing prior to sentencing and, if the sexually oriented offense is a felony, may conduct it as part of the sentencing hearing as required by section 2929.19 of the Revised Code. The court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, location of the hearing. At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator.
In making the determination that a defendant is a sexual predator, the trial court must consider all relevant factors, including, but not limited to the factors set forth in R.C.2950.09(B)(2).
(a) The offender's age;
 (b) The offender's prior criminal record regarding all offenses, including, but not limited to, all sexual offenses;
 (c) The age of the victim of the sexually oriented offense for which sentence is to be imposed;
 (d) Whether the sexually oriented offense for which sentence is to be imposed involved multiple victims;
 (e) Whether the offender used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 (f) If the offender previously has been convicted of or pleaded guilty to any criminal offense, whether the offender completed any sentence imposed for the prior offense and, if the prior offense was a sex offense or a sexually oriented offense, whether the offender participated in available programs for sexual offenders;
 (g) Any mental illness or mental disability of the offender;
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 (i) Whether the offender, during the commission of the sexually oriented offense for which sentence is to be imposed, displayed cruelty or made one or more threats of cruelty;
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
R.C. 2950.09(B)(2) does not require that each factor be satisfied in order to make a determination that a defendant is a sexual predator. The statute simply requires that the trial court consider all factors which are relevant to its determination. SeeState v. Tracy(May 20, 1998), Summit App. No. 18623. unreported.
The clear and convincing evidence standard is the measure or degree of proof which is more than a preponderance of the evidence but not to the extent of such certainty as is required for proof beyond a reasonable doubt as in all other criminal matters. Statev. Scheibel(1990), 55 Ohio St.3d 71, 74. Clear and convincing evidence is the degree of proof which produces in the mind of the trier of fact a firm belief as to the facts sought to be established. In reviewing a trial court's determination based upon clear and convincing evidence, an appellate court must examine the record to determine whether sufficient evidence was presented to satisfy the requisite degree of proof. Id. at 74; State v.Patterson(Feb. 11, 1999), Cuyahoga App. No. 72448, unreported.
In the case sub judice, the state, at the conclusion of the sentencing hearing, moved to have defendant-appellant classified as a sexual predator. The trial court, in responding to defense counsel's request for a hearing on the issue, stated:
 Well, on this case, the Court, having heard all of the testimony at trial, the Court finds that a hearing is not necessary on this case. And I am going to find the defendant is a sexual predator. (Emphasis added.)
(T. 676.)
Clearly, the trial court failed to comply with R.C. 2950.09(B) by failing to provide the requisite notice of the hearing; by failing to conduct the necessary hearing; and by refusing to allow defendant-appellant the opportunity to present evidence in his own behalf. At the time the trial court made its determination, defendant-appellant had been removed from the courtroom due to an outburst during sentencing. While it is true that witnesses were present for sentencing purposes, there was no testimony taken at that time regarding any of the factors necessary for a determination regarding defendant-appellant's classification as a sexual predator. Accordingly, this matter is remanded for the limited purpose of conducting a sexual predator hearing in compliance with R.C. 2950.09(B). See State v. Hardy(Oct. 16, 1997). Cuyahoga App. No. 72463, unreported; State v. Heath(Dec. 18, 1998). Lucas App. No. L-98-1237, unreported.
Defendant-appellant's third assignment of error is well taken only as it relates to the issue of the sexual predator determination hearing.
Defendant-appellant's fourth and final assignment of error states:
 IV. THE TRIAL COURT IMPROPERLY DENIED RODNEY FUSSELL'S MOTION FOR A NEW TRIAL.
Defendant-appellant argues, through his fourth and final assignment of error, that the trial court erred in denying his motion for a new trial based upon newly discovered evidence, pursuant to Crim.R. 33(A). Defendant-appellant's argument was based upon three affidavits attached to the motion in which one of the affiants essentially maintained that Ms. Hollins, the mother of the victim, admitted that she had manipulated her daughter into falsifying molestation and rape charges against defendant-appellant in retaliation for refusing to leave his wife and marry her.
Crim.R. 33 states in pertinent part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights.
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses of the state;
 (3) Accident or surprise which ordinary prudence could not have guarded against * * *;
 (6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on. the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court must postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.
A trial court's decision to grant or deny a motion for a new trial is not subject to reversal on appeal absent an abuse of discretion. State v. Schiebel(1990), 55 Ohio St.3d 71,564 N.E.2d 54. syllabus. An abuse of discretion exists where the trial court record demonstrates that the court's attitude was unreasonable, arbitrary or unconscionable. State v. Montgomery(1991), 61 Ohio St.3d 410,413, 575 N.E.2d 167; State v. Adams(1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144. The discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party. State v. Otten(1986), 33 Ohio App.3d 339,340, 515 N.E.2d 1009; State v. Wilson(Dec. 3, 1998) Cuyahoga App. No. 72165, unreported.
In the case sub judice, the trial court correctly determined that the affidavits upon which the motion for new trial was based did not constitute newly discovered evidence. Initially, it was determined that the testimony contained in the affidavits would not have been admissible at trial since it was merely hearsay statement offered to impeach the credibility of Ms. Hollins. More significantly, the disputed evidence failed to demonstrate that the outcome of the trial would be different if a new trial were granted. State v. King(1989), 63 Ohio App.3d 183, 193. For the foregoing reasons, the trial court did not abuse its discretion in denying defendant-appellant's motion for a new trial.
Defendant-appellant's fourth and final assignment of error is not well taken.
Judgment of the trial court is hereby affirmed in part, reversed in part and remanded for a sexual predator determination hearing pursuant to R.C. 2950.09.
This cause is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Costs to be divided equally between plaintiff-appellee and defendant-appellant.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure
 ___________________________________ MICHAEL J. CORRIGAN JUDGE
PORTER, A.J., and SPELLACY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).