OPINION *Page 2 
{¶ 1} Appellant was found delinquent for having committed two counts of rape and one count of gross sexual imposition. Appellant now seeks to appeal the delinquency findings and disposition.
 STATEMENT OF FACTS AND CASE {¶ 2} On August 15, 2006, appellant, whose date of birth is March 10, 1988, was charged with delinquency by reason of having committed two counts of rape in violation of R.C. 2907.02(A)(1)(b), first degree felonies and one count of gross sexual imposition in violation of R.C.2907.05(A)(4), a third degree felony.
 {¶ 3} In count one of the complaint, appellant was charged with having engaged in sexual conduct with M.D., whose date of birth is March 6, 1994. The incidents allegedly took place when M.D. was four or five years of age as a continuing course of conduct from March 6, 1998, to March 5, 2000. In counts two and three, appellant was charged with having engaged in sexual conduct and sexual contact with A.T. whose date of birth is February 26, 1991. The incidents allegedly occurred when A.T. was between five and seven years of age, between the dates of January 1, 1997, and December 31, 1998. At the time of the alleged offenses appellant was between eight and eleven years of age. Appellant was sixteen years of age when the delinquency complaint was filed and adjudicated.
 {¶ 4} On September 12, 2006, appellant appeared in court represented by appointed counsel, and entered a not true plea to all the charges. Appellant's parents, Twila and Jerry Rine, were also present for the proceedings. Pending adjudication, appellant was released on electronically monitored house arrest, which was *Page 3 
subsequently modified to standard house arrest. Upon the request of appellant's counsel, the adjudication of the complaint was scheduled for November 9, 2006. Prior to adjudication, on October 13, 2006, the State provided appellant with discovery which included a list of witnesses for trial.
 {¶ 5} On November 9, 2006, appellant appeared before Judge Hoover for an adjudication hearing. During the adjudication the State called several witnesses including the alleged minor victims M.D. and AT, Twila Rine, Stacey Idelman, and Kelly Thomas.
 {¶ 6} At the time of the adjudication hearing, M.D. was twelve years of age and in seventh grade. During the adjudication, M.D. testified that in the fall or winter of her sixth grade school year, her science teacher presented the class with a question book for discussion. One of the questions posed to the class was whether a girl raped by her uncle should go tell and if so, who should she tell. The class responded that the girl should tell a trusted adult. Two of M.D.'s same age classmates, who were aware of the alleged abuse by appellant, encouraged M.D. to tell a trusted adult. As a result, M.D. disclosed to her science teacher that she had been sexually abused by appellant. Thereafter, the abuse was disclosed to M.D.'s parents and law enforcement. (Transcript of November 9, 2006 Proceedings at pages 63-65, hereinafter T.at ___). The matter was subsequently investigated by Detective Chris Slayman of the Licking County Sheriff's Department.
 {¶ 7} Stacey Idelman, M.D.'s mother, testified that Detective Slayman asked her if appellant would have had access to any other children. Ms. Idelman testified that she was aware that A.T. would have been in the Rine home. Thereafter, A.T.'s mother, Kelly *Page 4 
Thomas, was contacted by Detective Slayman. While riding in the car, Ms. Thomas asked A.T. if anything inappropriate had occurred with appellant. Initially, A.T., now fifteen years of age, denied any inappropriate behavior. However, upon reaching the driveway of their home, A.T. began to cry and vomit and gave her mom a written note that explained that sexual abuse had occurred with appellant on one occasion. T. at 139 and 114-116.
 {¶ 8} During the adjudication M.D. testified that her father, Jeremy Rine, is appellant's brother. M.D.'s grandparents are Twila and Jerry Rine. Jeremy Rine lived with his parents (Twila and Jerry Rine) until 1997. Jeremy Rine and Stacey Idelman had been engaged but broke up prior to M.D.'s birth in March of 1994.
 {¶ 9} M.D. testified that when she was between the ages of four and eight years of age she had visitation with the Rine family every other weekend. The visitation was so frequent that she had her own bedroom in the home. M.D's visitation with her father and her grandparents ended for an unrelated reason in December of 2004.[1]
 {¶ 10} M.D. testified that when she was approximately four and five years of age, on about fifteen to twenty occasions, appellant caused her to perform fellatio. Specifically, M.D. testified that "appellant made me stick his penis in my mouth and made me touch his penis". T. at 51. M.D. testified that the incidents occurred in the Rine's living room, in a boat which was parked in the Rine's driveway and in appellant's bedroom. She testified that appellant's penis was "soft and kinda bumpy". She stated that appellant would threaten her and tell her that if she told he would cut off his penis with a pair of scissors, or tell her grandmother that it was all her fault. T. at 57. *Page 5 
 {¶ 11} M.D also testified that appellant showed her pictures on the computer of women and men having sex and of naked girls. T. at 56. On one occasion she stated that appellant showed her a picture of an adult male standing next to a naked little girl and told her, that's "something like us". T. at 56.
 {¶ 12} M.D. stated that she continued to go back to the Rine home because she loved her grandparents and thought "it would stop". She testified that she never told her grandparents or mother but did tell two close friends at school. She testified that she knows A.T. but never discussed the abuse with A.T. She further stated that she hasn't had any contact with A.T. in two years. She also stated that on two occasions her grandfather, Jerry Rine, entered the room when appellant was engaged in the abuse. M.D. stated that on those two occasions the appellant quickly pulled up his pants. M.D. testified that her grandfather didn't see anything on either occasion. T. at 59 and 77.
 {¶ 13} At the time of the adjudication hearing A.T. was fifteen years of age and in the tenth grade at school. A.T. testified that when she was approximately six or seven years old appellant would ask her "to do things". T. at 118-119. She stated that one incident of sexual abuse occurred in appellant's bedroom at the Rine home. At the time of the incident, Jeremy Rine and A.T.'s mom were dating and Twila Rine would baby-sit. She testified that appellant, "asked me to put his penis in my mouth or he would cut it off". T. at 121. She also testified that he put his hands down her pants and touched her vaginal area. T. at 121. She stated that she did perform fellatio on the appellant. T. at 122. She stated that she just did it because, "I didn't know what to do, and he said it was a secret and don't tell anybody, and I left the room and no one came up to me and I never told anyone about it. * * * I knew something was wrong, but I was too embarrassed *Page 6 
to tell anyone about it because I didn't want them thinking I was a bad person for doing it". T. at 123. She testified that she knew M.D., but that she was never in the house at the same time as M.D. and that they had never discussed the abuse. T. at 126.
 {¶ 14} On November 9, 2006, upon hearing all the evidence, the trial court adjudicated appellant delinquent for having committed two counts of rape and one count of gross sexual imposition. Specifically, the trial court stated, "The Court finds convincing and credible the testimony of both of the victims" T. at 166. The trial court continued disposition for eight weeks and ordered appellant to submit to a psychological evaluation and a sex offender assessment. The trial court further ordered the Sheriff's Department to seize appellant's computer and examine its content for dispositional purposes. T. at 169.
 {¶ 15} On January 10, 2007, the trial court conducted a dispositional hearing. During the dispositional hearing the trial court reviewed the conclusions provided in the psychological evaluation and various other reports. The trial court stated that the reports indicated, that although appellant and his mother adamantly deny his guilt, appellant "readily admitted to having touched his niece (M.D.) inappropriately". (Transcript of January 10, 2007, dispositional hearing at page 15, hereinafter TI. at ___). The reports also stated that appellant claimed that the four year old initiated the sexual activity and frequently took her clothes off in front of him and asked him to touch her. TI. at 16 and 29-30. He further stated that he has had sex with approximately thirty to forty women since the age of sixteen years. TI. at 17. Images taken from appellant's computer depicted female children in pornographic poses. TI. at 21. "[I]ncluded in the internet chat logs were elaborate and violent rape fantasies that [appellant] was acting out with *Page 7 
internet partners". TI. at 28. The psychological evaluation stated, "Because of [appellant's] denial and his tendency to minimize his inappropriate behaviors, he appears to be at a relatively high risk for further sexual offending." TI. at 22. After reviewing the information pertinent to disposition, the trial court imposed a 60 day term of commitment on the gross sexual imposition charge and continued disposition on the rape charges.
 {¶ 16} On February 23, 2007, the trial court held a dispositional hearing on the two rape charges and a review hearing on the gross sexual imposition charge. At the hearing, appellant indicated that an independent psychological evaluation had been requested and performed by Dr. Wenke. In a report submitted by the probation department, based on recent interviews with the appellant, the probation department stated that appellant "continued with a pattern of sexually deviant behaviors over the past several years since this offense occurred all the way to the present. The materials found in his possession indicate the strong possibility of deviant arousal patterns involving young children, extreme violence and rape. * * * [Appellant's] defensiveness and denial and his parent's overwhelming desire to support this continues to make him a high risk for further offending." (Transcript of February 23, 2007, Disposition Hearing at page 17, hereinafter TII. at ___.) Dr. Wenke reported that appellant "has found a way to allow himself to entertain unacceptable sexual fantasies, and he does so at great risk to himself and those around him despite knowing that it is unacceptable." TII. at 18. Upon reviewing the current dispositional information, the trial court imposed sentence on the rape charges. On each rape charge the trial court imposed a one year minimum to twenty-one year maximum commitment to the Ohio Department of Youth Services. The *Page 8 
court further ordered the rape sentences to run concurrently. The trial court also suspended the remaining sentence on the gross sexual imposition charge. It is from this adjudication and disposition that appellant seeks to appeal setting forth the following assignments of error:
 {¶ 17} "I. THE APPELLANT'S CASE WAS PREJUDICED BY HIS TRIAL COUNSEL'S (1) FAILURE TO REQUEST A PRETRIAL COMPETENCY HEARING OF THE VICTIM; (2) FAILURE TO PRESENT ALL EVIDENCE FAVORABLE TO THE APPELLANT AT TRIAL; AND (3) FAILURE TO REQUEST A RAPE SHIELD HEARING.
 {¶ 18} "II. THE TRIAL COURT ERRED BY REFUSING TO ALLOW TESTIMONY OF PRIOR RAPE ACCUSATIONS BY THE VICTIM PURSUANT TO ORC § 2907.02, THE RAPE SHIELD STATUTE.
 {¶ 19} "III. THE VERDICT AGAINST APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 20} In the first assignment of error, appellant argues that counsel was ineffective for failing to request a pretrial competency hearing of the child-victims, for failing to present potentially favorable testimony and for failing to request a rape shield hearing. We disagree.
 {¶ 21} An accused juvenile has a constitutional right to counsel, and the same right to effective assistance of counsel as an adult criminal defendant. In re Gault (1967), 387 U.S. 1, 41, 87 S.Ct. 1428,18 L.Ed.2d 527. The standard for determining whether counsel was ineffective in actions affecting orders of dispositions made by *Page 9 
juvenile courts is the same as that applied in criminal cases. In reRackley (July 16, 1997), 9th Dist. No. 18139.
 {¶ 22} The reversal of a conviction for ineffective assistance of counsel requires the defendant to show, (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. State v. Smith, 89 Ohio St.3d 323, 327, 2000-Ohio-166,731 N.E.2d 645, citing Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 142, 538 N.E.2d 373.
 {¶ 23} Essentially, defense counsel's performance must fall below an objective standard of reasonableness to be deficient in terms of ineffective assistance of counsel. See Bradley Supra. Moreover, the defendant must show that there exists a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. State v. White, (1998) 82 Ohio St.3d 16, 23, 1998-Ohio-363,693 N.E.2d 772. If one component of the test disposes of an ineffective assistance of counsel claim, it is not necessary to address both components. Strickland supra; Bradley supra.
 {¶ 24} Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980),62 Ohio St. 2d 45, 49, 402 N.E.2d 1189. Failure to raise a meritless issue does not constitute ineffective assistance. In re Carter, Jackson App. Nos. 04CA15 and 04CA16, 2004-Ohio-7285 at paragraph 41; State v.Knott, Athens App. No. 03CA30, 2004-Ohio-5745, at paragraph 35. Furthermore, a decision of who to call as a witness falls within the purview of trial tactics and generally will not constitute ineffective assistance of counsel. State v. Coulter (1992), 75 Ohio App. 3d 219,230, 598 N.E.2d 1324. Finally, a reviewing court must not use hindsight to *Page 10 
second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners. SeeStrickland, 466 U.S. at 689.
 {¶ 25} Appellant first argues that appellant was ineffective for failing to request a pretrial competency hearing of the twelve and fifteen year old child victim-witnesses.
 {¶ 26} As a trier-of-fact, a trial judge makes the preliminary determination as to the competency of all witnesses including child witnesses. State v. Wilson (1952) 156 Ohio St. 525, 103 N.E.2d 552. Competency to testify, pursuant to the Rules of Evidence, "* * * addresses competency as of the time of trial, not as of the time at which the incident in question occurred." State v. Clark (1994),71 Ohio St.3d 466, 470-471, 1994-Ohio-43, 644 N.E.2d 331.
 {¶ 27} The question of whether a child witness was competent at the time that the events about which she or he will testify occurred is actually a question of credibility to be decided by the trier of fact.Id., 471. The issue is properly addressed on cross examination to determine the child's ability to accurately recall events. Id. A trial court judge has no mandatory duty to conduct a voir dire examination of a child witness to determine their competency just because the child is testifying about events that occurred when he or she was under the age of ten years. State v Clark supra. Additionally, the Ohio Supreme Court has held that absent "some articulable concern otherwise", a witness who is at least ten year of age at the time of trial is per se presumed competent to testify to the events which gave rise to the action. See Evid. R. 601(A) and State v. Clark, Supra. *Page 11 
 {¶ 28} In this case the record establishes that the child witnesses were able to recall and communicate facts and observations and appreciated their responsibility to be truthful. Furthermore, a pre-trial hearing was not required.
 {¶ 29} Appellant also argues that counsel was ineffective for failing to present the testimony of Jerry Rine and Jeremy Rine. Appellant states in support that M.D. testified that Mr. Jerry Rine entered a room where the abuse was occurring on two separate occasions. Therefore appellant asserts that Jerry Rine's potential testimony regarding these incidents might have been favorable to appellant's defense. Furthermore, appellant argues that Jeremy Rine was familiar with both witnesses and may have been able to provide valuable insight to discredit the child victims.
 {¶ 30} Initially we note, that during her testimony, M.D. stated that although Jerry Rine entered the room, appellant quickly pulled up his pants and Jerry Rine saw nothing. Jerry Rine was present at each stage of the proceeding and fiercely maintained his son's (appellant's) innocence. It would seem likely that if Jerry Rine had positive information to provide on the appellant's behalf he would have testified.
 {¶ 31} Finally, for this court to now decide that Jerry and Jeremy Rine would have somehow provided valuable information for the defense is purely speculative. Mere "speculation as to what a witness might have said and how it would have effected the outcome is not a proper function for the reviewing court. See State v. Kolasa (May 19, 1987), Cuyahoga App. No. 5118, unreported." State v. Shepeard (September 14, 1989), Cuyahoga App. No. 55844, unreported, at 6. *Page 12 
 {¶ 32} Additionally, the record reflects that the child witnesses were competent and effectively cross-examined by counsel. Accordingly, counsel's trial strategy did not fall below an objective standard of reasonableness
 {¶ 33} Finally, appellant argues that counsel was ineffective for failure to request a hearing prior to trial to determine the admissibility of certain statements allegedly made by M.D. Specifically appellant alleged that M.D. had falsely accused A.T., of licking her (M.D.'s) belly and putting her hands down her (M.D.'s) pants. Appellant sought to introduce this information to impeach M.D.'s character for truthfulness on cross-examination.
 {¶ 34} Although impeachment with a prior statement is generally done during cross-examination of a witness, appellee discusses in the reply brief, that it may be local practice of the trial court to require these types of matters to be brought to the trial court's attention in pre-trial motions and hearings. In this case appellant's counsel did not file a pre-trial motion and/or request for a hearing.
 {¶ 35} Generally, pursuant to R.C.2907.02(D) and (E) (the rape shield statute), a hearing prior to trial is required, where evidence of the victim's sexual activity is sought to be introduced to establish the origin of semen, pregnancy, disease, or past sexual activity with the offender. In which case, the evidence is only admissible to the extent that the court, after a hearing, finds the evidence to be material to a fact in issue and further finds that the inflammatory or prejudicial nature of the evidence does not outweigh the probative value. State v.Gardner (1979), 59 Ohio St.2d 14, 18-19, 391 N.E.2d 337. *Page 13 
 {¶ 36} However, when counsel for a defendant wishes to impeach a victim with an allegedly false abuse allegation, a pretrial motion is not generally required. In State v. Boggs, (1992) 63 Ohio St.3d 418,588 N.E.2d 813, the Ohio Supreme Court held that where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing. During the in camera hearing the trial judge shall ascertain whether sexual activity was involved and introduction is prohibited pursuant to R.C.2907.02(D)[2], or whether the accusation was totally unfounded and therefore could be inquired into pursuant to Evid.R. 608(B).[3]
 {¶ 37} In this case, counsel sought to introduce the alleged allegations to impeach the credibility of the child victim. Counsel never sought to introduce the alleged accusations as evidence of semen, pregnancy, disease or the victim's sexual activity with the offender, and therefore a pre-trial hearing pursuant to R.C. 2909.02(D) was not required. However, counsel did inquire on cross-examination whether the witness had made a prior false allegation. *Page 14 
 {¶ 38} During counsel's cross-examination of M.D. counsel asked M.D. if she had ever accused A.T. of doing anything, to which M.D. responded, "No". Counsel then attempted to cross-examine M.D. about the conduct in question, being that A.T. had allegedly licked her belly and put her hands down her pants. The State objected. During a brief recess counsel for appellant was given an opportunity to provide the trial court with proof that the alleged accusations were in fact false. Counsel was unable to provide proof of falsity. Consequently the inquiry as to the specific instance of conduct was terminated.
 {¶ 39} Upon review we find that the information of sexual activity was not sought to be introduced as an exception to the rape shield statute and therefore a pre-trial hearing was not required. Furthermore, we find that counsel properly attempted to cross-examine the victim regarding the allegations in accordance with Evid.R.608(B).
 {¶ 40} For these reasons we do not find that counsel's performance during trial fell below an objective standard of reasonableness. Appellant's argument that he was denied effective assistance of counsel is not well taken. Accordingly appellant's first assignment of error is hereby overruled.
 II {¶ 41} Appellant argues in his second assignment of error that the trial court erred when it failed to permit counsel to cross-examine M.D. as to whether M.D. had previously accused A.T. of "licking her belly and putting her hands down her pants".
 {¶ 42} During the cross-examination of M.D. the following colloquy occurred:[4]
 {¶ 43} "Q: Do you recall when your dad was dating Kelly? *Page 15 
 {¶ 44} "A: Yes.
 {¶ 45} "Q: Okay. Did you get to see [A.T.] sometimes then?
 {¶ 46} "A: Yes.
 {¶ 47} "Q: Do you remember a time when you didn't get to see [A.T.] anymore?
 {¶ 48} "A: Yes.
 {¶ 49} "Q: Do you remember why?
 {¶ 50} "A: No.
 {¶ 51} "Q: You don't remember why?
 {¶ 52} "A: No.
 {¶ 53} "Q: You didn't say something about [A.T.]?
 {¶ 54} "A: No.
 {¶ 55} "Q: You didn't accuse her of doing something?
 {¶ 56} "A: No.
 {¶ 57} "Q: You didn't?
 {¶ 58} "A: No.
 {¶ 59} "Q: You didn't accuse [A.T.] of licking your belly while putting her hand down your pants?
 {¶ 60} "State: Objection, your honor.
 {¶ 61} "* * * The basis for the objection, is rape shield. Any other contact that [M.D.] has had with any other person outside Jerrod is not permissible to be involved and should have been addressed before we got here today. * * * *Page 16 
 {¶ 62} "Defense: * * * It was addressed at a preliminary conference. I addressed it to [counsel for the State] stating that she needed to question her witness regarding her veracity because she had also accused [A.T.] of the same thing. * * *
 {¶ 63} "Court: * * * Did you raise it as a pretrial issue with the Court? The answer is no. * * * I think this is extremely clear-cut. An objections' been made, the Court is going to sustain the objection."
 {¶ 64} The constitutional right of cross-examination includes the right to impeach a witness's credibility. State v. Green,66 Ohio St.3d 141, 609 N.E.2d 1253; State v. Younker (October 4, 2002), Darke App. No. 02CA1581, 2002-Ohio-5376; Evid.R. 611(B). Any denial of a defendant's right to full and effective cross-examination of his accuser is the denial of a fundamental constitutional right essential to a fair trial.State v. Hannah (1978), 54 Ohio St.2d 84, 374 N.E.2d 1359; Younker,supra.
 {¶ 65} On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, and confusion of the issues, the witness' safety, or repetitive, marginally relevant interrogation. Delaware v.Van Arsdall (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. An accused's constitutional right to confront the witnesses against him is not absolute and, in appropriate circumstances, must give way to legitimate State interest. State v. Gardner (1979), 59 Ohio St.2d 14,391 N.E.2d 337.
 {¶ 66} Furthermore, the admission or exclusion of evidence rests within the sound discretion of the trial court. State v Sage (1987),31 Ohio St. 3d 173, 510 N.E.2d 343. A reviewing court must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. Id. Citing State v Adams (1980), *Page 17 62 Ohio St. 2d 151, 157, 404 N.E.2d 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Adams supra, at 157.
 {¶ 67} Pursuant to Evid.R. 608(B), a very limited introduction of evidence of the character and conduct of a witness, if clearly probative of truthfulness or untruthfulness, may be inquired into on cross-examination. Where a prior allegation of sexual abuse is totally unfounded, inquiry into the prior false statement may be made on cross examination pursuant to Evid.R. 608(B). State v Boggs, supra. However, the burden is on the defense to demonstrate that "the alleged accusations were totally false and unfounded." Id. at 423.
 {¶ 68} In this case, appellant's counsel argued that the inquiry as to prior allegations was solely for impeachment purposes. However, counsel never provided the court with proof that the alleged allegations were either false or fabricated by the victim. "A mere accusation, never proven false, is not sufficiently probative of the credibility of the witness when weighed against the legislative intent of the rape shield law". State v. Schillinger (Dec. 27, 1994), Stark App. No. 9492, unreported. Therefore, the trial court did not err in failing to permit cross-examination.
 {¶ 69} Accordingly, appellant's second assignment of error is hereby overruled.
 III {¶ 70} Appellant, argues in his third assignment of error that his finding of delinquency by reason of having committed two counts of rape and one count of gross sexual imposition was against the manifest weight of the evidence. Specifically, appellant argues that the adjudication transcript is filled with inconsistent details from *Page 18 
the victims and lacked any physical evidence to substantiate the allegations. We disagree.
 {¶ 71} A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would constitute a crime if committed by an adult. R.C. 2151.35(A); Juv.R. 29(E)(4). Our function when reviewing the weight of the evidence is to determine whether the greater amount of the credible evidence supports the verdict. State v. Thompkins,78 Ohio St.3d 380, 387, 678 N.E.2d 541. In order to undertake this review, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial.Id. On the other hand, we will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy,84 Ohio St.3d 180, 193-94, 1998-Ohio-533, 702 N.E.2d 866. In conducting our review, we are guided by the presumption that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 72} In this case, appellant was found delinquent by reason of having committed two counts of rape and one count of sexual imposition. In order to find *Page 19 
appellant delinquent, as alleged in the complaint, the trier of fact would have to find as follows:
 {¶ 73} R.C. 2907.02(A)(1)(b), [Rape], states in pertinent part that "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender * * * when any of the following applies: * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 74} R.C. 2907.05(A)(4), [Gross Sexual Imposition], states in pertinent part that "No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following apply: * * * (4) The other person, * * * is less than thirteen years of age, whether or not the offender know the age of the person."
 {¶ 75} R.C. 2907.01(A) defines "sexual conduct" as "fellatio". R.C.2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another including without limitation the thigh, genitals, buttocks, pubic region, or if the person is a female, a breast for the purpose of sexually arousing or gratifying that person.
 {¶ 76} The testimony presented during the adjudication established that, although appellant was only charged with one offense, appellant caused M.D. to engage in fellatio on multiple occasions. The testimony further established that appellant caused A.T. to engage in fellatio and reached into her pants and touched her vaginal area. The trial court specifically stated that it found the testimony of M.D and A.T. to be credible. Furthermore, it is not surprising that the state lacked physical evidence in a situation where young children were either scared by the appellant or too embarrassed to disclose abuse until several years after the incidents. *Page 20 
 {¶ 77} Accordingly, appellant's third assignment of error is herby overruled.
 {¶ 78} The Judgment of the Licking County Court of Common Pleas, Juvenile Division is hereby affirmed.
 Edwards, J., Gwin, P.J., and Wise, J., concur. *Page 21 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Licking County Court of Common Pleas, Juvenile Division, is affirmed. Costs assessed to appellant.
[1] It appears that a conflict arose between Jeremy and his new wife regarding his visitation with M.D. Consequently visitation ended.
[2] R.C. 2907.02(D) and (E) state in pertinent part as follows: Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
(E) Prior to taking testimony or receiving evidence of any sexual activity of the victim or the defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before a preliminary hearing and not less that three days before trial. Or for good cause shown during trial.
[3] Evid.R, 608(B) states as follows: "specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R.609, may not be proved by extrinsic evidence. They may however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
[4] For the purposes of this opinion the minor child's names during the course of the colloquy shall be abbreviated. *Page 1