THE STATE OF OHIO, APPELLEE, *v.* GARDNER ET AL., APPELLANTS.

[Cite as State v. Gardner (1979), 59 Ohio St. 2d 14.]

(No. 78-919—Decided July 3, 1979.)

**16**

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Robert L. Steely*, for appellee.

*Messrs. Goodman, King & Cleveland, Mr. Alan I. Goodman* and *Ms. Kathryn J. King*, for appellants.

*Per Curiam.* Appellants' initial proposition of law is that the operation of Ohio's rape shield law, specifically R. C. 2907.02 (D),[2] unconstitutionally infringed upon their Sixth Amendment right to confrontation of witnesses and their right to a fair trial as secured by the Due Process Clause. During the trial, the defense attempted to call a witness who would testify that complainant 'Fenrick had solicited him for sex. This was for the purpose of impeaching the credibility of Fenrick, who, on cross-examination, had denied ever engaging in prostitution. The trial judge refused to allow this evidence to be presented on the basis of R. C. 2907.02(D). Later, the defense sought to introduce testimony to the effect that complainant had a reputation in the community as a prostitute. This evidence was evidently proffered both for impeachment purposes and as bearing on the issue of consent, but it too was excluded by the shield law.

It is an established constitutional principle that "[t]he

---

[2]R. C. 2907.02(D) provides:

"Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

"Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers* v. *Mississippi* (1973), 410 U. S. 284, 294-95.[a] In *Davis* v. *Alaska* (1974), 415 U. S. 308, a shield law designed to protect the confidentiality of juvenile records was set aside when it ran afoul of defendant's right of confrontation. The court stressed that the defense was not merely attempting to use the youth's record to attack his general credibility, but rather, was trying to develop a theory that the witness was biased in favor of the government because he may have been subject to undue pressure by the the authorities or felt a need to divert suspicion away from himself. *Id.*, at pages 311, 317-18. The court concluded, at page 319, that, "[*i*]*n this setting* * * *the right of confrontation is paramount to the State's policy of protecting a juvenile offender.*" (Emphasis added. ) Thus, it is evident that the Supreme Court adopted a balancing test in this area, rather than a blanket prohibition against shield statutes. In fact, Justice Stewart's concurrence, at page 321, emphasized "that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions."

In determining whether R. C. 2907.02(D) was unconstitutionally applied in this instance, we must thus balance the state interest which the statute is designed to protect against the probative value of the excluded evidence.

Several legitimate state interests are advanced by the shield law. First, by guarding the complainant's sexual privacy and protecting her from undue harassment, the law discourages the tendency in rape cases to try the victim rather than the defendant. In line with this, the law may encourage the reporting of rape, thus aiding crime prevention. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally proba-

[a]See, also, *Washington* v. *Texas* (1967), 388 U. S. 14, interpreting the compulsory process clause of the Sixth Amendment as implying the right to present witnesses for the defense.

18

tive, the statute is intended to aid in the truth-finding process.[4]

The key to assessing the probative value of the excluded evidence is its relevancy to the matters as proof of which it is offered. Appellants contend that evidence of complainant's reputation as a prostitute is relevant to the issue of consent, which was Ogletree's defense to the rape charge. The supposed relevancy here rests on an assumption that prior unchastity with other individuals indicates a likelihood of consent to the act in question with the defendant. While this premise may have had some validity in an earlier time, it seems quite unpersuasive in today's era of more fluid morals. "As critical thought and analysis have been brought to bear on these issues, it has become apparent that in many instances a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent." *People* v. *McKenna* (Colo. 1978), 585 P. 2d 275, 278. (See, also, *People* v. *Thompson* (1977), 76 Mich. App. 705, 257 N. W. 2d 268, which upheld Michigan's rape shield law in the face of a Sixth Amendment challenge.)

Assuming that instances might exist where prior sexual activity by the complainant with third parties is relevant, we are not presented with such a situation in the present application of R. C. 2907.02(D). Evidence that complainant had a reputation as a prostitute is not sufficiently probative of consent to outweigh the state's legitimate interests in excluding the testimony, at least where there is no suggestion in the record that financial arrangements were entered into for sexual activities in this instance.

Likewise, defense attempts to impeach the credibility of complainant by the reputation evidence and evidence of a specific solicitation were correctly prohibited by the trial court. The prosecution did not raise the issue of com-

---

[4]See, generally, Berger, Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom, 77 Columbia L. Rev. 1, 54-55 (1977); Note, Indiana's Rape Shield Law: Conflict with the Confrontation Clause?, 9 Ind. L. Rev. 418, 435 (1976).

plainant's chastity; rather, the defense first inquired into the subject on cross-examination. Fenrick was asked whether she was involved in prostitution and she answered in the negative. Having initiated the inquiry, appellants are bound by the answer they received. As the Arkansas Supreme Court stated in *Waterman v. State* (1941), 202 Ark. 934, 935, 154 S. W. 2d 813, "[w]e think the court correctly excluded the offered testimony because it was a collateral matter which could not be proven for impeachment purposes."

Since it is apparent that the prejudicial and inflammatory nature of the excluded testimony outweighed what little, if any, probative value it may have had, we conclude that the application of R. C. 2907.02(D) in this cause did not violate appellants' constitutional rights.[5]

Appellants' second and third propositions of law involve whether the admission, over defense objection, of evidence of appellants' sexual activities with third parties on July 7, 1976, was prejudicial error. Appellants contend that such evidence was not within the exception provided by R. C. 2945.59,[6] and, therefore, it should have been excluded by R. C. 2907.02(D).

The prosecution presented the testimony of two women who stated that, on the night preceding the events for which appellants were being tried, the defendants took them to Carroll Dicks' apartment. There the defendants forced them, at gunpoint, to disrobe and commit oral sex upon each other. Thereafter, one girl was forced to commit fellatio

---

[5]We hasten to stress that our holding is limited to the particular application of R. C. 2907.02(D) to the facts in this cause. Whether the statute could conceivably be applied so as to exclude arguably relevant evidence, we cannot now determine.

[6]R. C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

upon Gardner, and the other, the same act upon Ogletree. The complainant Fenrick was present at that time and testified to the same events. This testimony was admitted under the "other acts" statute, R. C. 2945.59, and the jury was instructed to consider it only for the purposes mentioned therein.

This court has on many occasions ruled upon the admissibility of collateral acts under R. C. 2945.59 and its predecessor. It is well-settled that such evidence is admissible only when "the prior offense is part of a common plan or scheme or where it tends to prove motive, intent, knowledge or identity, not *because* the prior acts prove that defendant is crime prone, but *in spite of* such fact, on the theory that the circumstances involved in the prior offense or offenses comprise substantial probative evidence of guilt of the particular offense in question." (Emphasis sic.) *State* v. *Hector* (1969), 19 Ohio St. 2d 167, paragraph two of the syllabus.

Our task is to determine first, whether any of the elements mentioned in the statute were material to the issues at trial, and if so, whether the disputed testimony was relevant, as tending to prove a material element. The sole defense put forth at trial to the charge of rape was consent. The defense denied complainant's testimony that she was forced, at gunpoint, to commit fellatio upon Ogletree in the moving auto. Rather, appellants alleged that Fenrick consented to the act; in fact, that she initiated the sexual overtures. Thus, Ogletree contended that he did not *intend* to commit forcible rape, but instead *intended* to participate in consensual sexual intercourse. The element of intent was therefore a material fact in issue at trial.

In order for evidence concerning the acts of July 7 to be relevant to the issue of intent, they "must have such a temporal, modal and situational relationship with the acts constituting the crime charged that evidence of the other acts discloses purposeful action in the commission of the offense in question." *State* v. *Burson* (1974), 38 Ohio St. 2d 157, 159. We find that such a relationship does exist. The disputed evidence tends to show that handguns were the instruments of force, that the victims were required to

commit the same act, and that this occurred at the apartment of Carroll Dicks, the same residence from which complainant was allegedly abducted the next day. Being so closely related in nature, time and place to the offense charged, this evidence is obviously relevant as tending to prove intent to commit forcible rape. Thus, it was correctly admitted under R. C. 2945.59.[7]

Appellants' final colorable argument[8] is that the trial court committed reversible error by not allowing the defense to cross-examine a prosecution witness concerning the conditions of his probation. That witness admitted on both direct and cross-examination that he had been convicted and was presently on probation. In their brief, appellants contend that, if they had been allowed to inquire as to any conditions on his probationary status, they could have impeached the credibility of this witness by showing bias. However, no proffer was ever made as to what these conditions were and what they might tend to prove. There being nothing in the record to support appellants' contention, the issue is not properly before us.

Having found neither constitutional infirmity nor prejudicial error in the trial court proceedings, we affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

HERBERT, J., concurs in the judgment.

P. BROWN, J., dissents.

---

[7] Appellants' contention, that an *in camera* hearing upon the admissibility of the "other acts" testimony, as required by R. C. 2907.02 (E), was not provided, is without merit. The trial judge did rule on the admissibility of the evidence after hearing arguments from both counsel, out of the presence of the jury. Appellants' contention that the "other acts" testimony should have only been admitted in rebuttal is also without merit, since they have not shown prejudice from its admission in the state's case-in-chief.

[8] Appellants also contend that the trial court should have limited the prosecution's cross-examination of Sara McGowan, concerning her recently entered guilty plea. However, no motion was ever made to so limit the cross-examination and no objection was ever raised. We find no merit to this contention.