OPINION
{¶ 1} Defendant, Robert E. Smiddy, appeals from his conviction and sentence for unlawful sexual conduct with a minor.
 {¶ 2} In the summer of 2004, Defendant met and became friends with L.S., the mother of the victim. Defendant later hired L.S. to work for him in his mortgage loan business. *Page 2 
Throughout the summer and fall of 2004, Defendant and L.S. and a group of their friends would often party at the Night Gallery bar in Springfield. After closing hours, the group would return to L.S.'s home at 1050 Stanway Avenue in Springfield and continue drinking. That is how Defendant met L.S.'s two teenage daughters, K.S. and J.S., who were fourteen and fifteen, respectively. On some occasions, L.S. allowed K.S. and J.S. to drink beer. Defendant often spent the night at L.S.'s house, usually sleeping in K.S.'s bedroom in the basement.
 {¶ 3} On eight separate occasions during the fall of 2004, beginning on October 1, 2004, Defendant engaged in sexual conduct including vaginal intercourse, anal intercourse and cunnilingus with fifteen year-old J.S. This conduct occurred in the early morning hours after others there had fallen asleep. All but one of these incidents took place before J.S.'s sixteenth birthday on December 9, 2004, and the conduct occurred in the basement, in K.S.'s bedroom. Defendant knew that J.S. was only fifteen at the time, and he told her not to tell anyone and to make it their secret. Defendant was thirty-seven years old at the time.
 {¶ 4} J.S. was suffering from emotional problems and an eating disorder, but she willingly participated in the sexual *Page 3 
activity because Defendant made her feel important, that he cared about her. When K.S. found what she believed was a semen stain on her bed sheets, she confronted Defendant about it. Defendant made a joke of it, and was nicknamed "Spot." Defendant later wrote, "See Spot Run" on K.S.'s birthday card and J.S.'s school notebook. Each time J.S. had sex with Defendant, she would put a star symbol on her calendar by that date.
 {¶ 5} At the beginning of 2005, Defendant became involved with a woman, Brenda C, from the Night Gallery bar. J.S. was jealous and became angry because she felt Defendant had used her just for sex. One day in February 2005, when J.S. was at her sister Jennifer's house drinking alcohol, J.S. told one of Jennifer's friends, Erin C, about her and Defendant. Erin C. called J.S.'s mother, L.S., who confronted J.S. and then called police.
 {¶ 6} Detective Meyer of the Clark County Sheriff's Office talked to J.S. and arranged for J.S. to call Defendant. Detective Meyer coached J.S. on what to say. The phone call to Defendant was tape recorded by police. During the call, Defendant told J.S. that he needed to talk to her face to face. Detective Meyer then set up a recording device in a vehicle belonging to J.S.'s mother, L.S., and arranged for *Page 4 
L.S. and J.S. to pick Defendant up at work. The plan was that on the way home, L.S. would stop at a pharmacy and go inside, leaving J.S. and Defendant alone in the car to talk. That conversation was also tape recorded.
 {¶ 7} In two recorded conversations, J.S. made specific references to J.S. and Defendant having engaged in sexual activity. Although his responses varied, Defendant never specifically denied that such conduct occurred. After police arrested Defendant, a phone message was left on the answering machine at J.S.'s house, threatening J.S. with physical harm. J.S. recognized the caller's voice as Defendant, and notified police.
 {¶ 8} Defendant was indicted on six counts of unlawful sexual conduct with a minor, with a specification that he was ten or more years older than the victim, R.C. 2907.04(A),(B)(3), and one count of intimidation of a victim or witness, R.C. 2921.04(B). The matter was tried to a jury.
 {¶ 9} Laboratory analysis of the yellow and purple bed sheets taken from K.S.'s bed revealed seminal fluid stains on each sheet, but no sperm, that contained a mixture of Defendant's and J.S.'s DNA. The odds that someone other than Defendant had left that DNA are 1 in 936 million with respect *Page 5 
to the purple sheet, and 1 in 4 quintillion with respect to the yellow sheet.
 {¶ 10} Defendant testified in his own defense and denied engaging in any sexual activity with J.S., though he acknowledged having had a vasectomy. Defendant argued that he wasn't even at J.S.'s home on the dates she alleges they had sex, either because he had his daughter for visitation or he was with Brenda C. Defendant claimed that J.S. made her story up because she was angry with Defendant for having rejected her sexual advances and offers to engage in sex, and because Defendant was seeing Brenda C.
 {¶ 11} The jury found Defendant guilty on all six counts of unlawful sexual conduct with a minor, but not guilty of intimidating a victim or witness. The trial court sentenced Defendant to consecutive prison terms totaling seven years, and classified him as a sexually oriented offender.
 {¶ 12} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 13} "THE TRIAL COURT ERRED IN RESTRICTING DEFENDANT-APPELLANT'S RIGHT TO CROSS-EXAMINE THE WITNESSES AGAINST HIM."
SECOND ASSIGNMENT OF ERROR
 {¶ 14} "THE TRIAL COURT ERRED IN RESTRICTING DEFENDANT-APPELLANT'S *Page 6 
RIGHT TO PRESENT TESTIMONY OF WITNESSES ON HIS BEHALF."
 {¶ 15} During the trial, Defendant attempted unsuccessfully to present to the jury, either through cross-examination of the victim or through the testimony of himself or other defense witnesses, evidence demonstrating that the victim, J.S., previously had sexual relations with someone other than Defendant; with M.B., a friend of the family. Defendant claimed that he had counseled J.S. about her inappropriate sexual relationship with M.B., and that this evidence was relevant to prove why J.S. made up a story about having sex with Defendant, because she was angry with Defendant because he disapproved of her conduct with M.B.
 {¶ 16} Defendant wanted to present evidence about the victim's sexual activity with persons other than Defendant for several reasons. First, to impeach the victim's credibility, which is the critical issue in the case, and rebut her claim during the State's case-in-chief that she was a virgin when she had sex with Defendant, thereby neutralizing the suggestion that Defendant stole her "innocence." Second, to bolster Defendant's theory of the case that the victim had tried unsuccessfully to seduce him into having sexual relations, saying she was experienced with other men, and *Page 7 
explain why a fifteen year old girl might make such sexual offers to an older adult male. Third, to provide a motive or explanation for why the victim made up her story in this case about having sex with Defendant after he rejected her sexual advances. The trial court excluded this evidence, holding that it is barred by the rape shield statute, R.C. 2907.02(D), that it has only marginal, if any, relevance, and that in any event its relevance and probative value is substantially outweighed by its inflammatory character and the danger of unfair prejudice. Evid.R. 403(A).
 {¶ 17} Defendant proffered for the record the testimony he unsuccessfully tried to present to the jury, which included his own testimony that the victim told his daughter, R.S., that she had sex with M.B., that the victim got a family member and a high school student in trouble because she alleged they had sex with her, and the testimony of Defendant's daughter, R.S., that the victim told her she had sex with M.B.
 {¶ 18} Defendant argues that the trial court's refusal to admit his proffered evidence constituted an abuse of discretion and deprived him of due process and a fair trial by unduly restricting his ability to cross-examine the victim on matters relevant to her credibility, and by impairing his *Page 8 
ability to present a defense.
 {¶ 19} The constitutional right of cross-examination includes the right to impeach a witness's credibility. State v. Green,66 Ohio St.3d 141, 1993-Ohio-26; State v. Younker (October 4, 2002), Darke App. No. 02CA1581, 2002-Ohio-5376; Evid.R. 611(B). Any denial of a defendant's right to full and effective cross-examination of his accuser is the denial of a fundamental constitutional right essential to a fair trial.State v. Hannah (1978), 54 Ohio St.2d 84; Younker, supra.
 {¶ 20} On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness' safety, or repetitive, marginally relevant interrogation. Delaware v.Van Arsdall (1986), 475 U.S. 673, 106 S.Ct. 1431. An accused's constitutional right to confront the witnesses against him is not absolute and, in appropriate circumstances, must give way to legitimate State interest. State v. Gardner (1979), 59 Ohio St.2d 14.
 {¶ 21} It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance the probative value against the danger of unfair prejudice. Younker, supra. We will not interfere with the trial court's *Page 9 
decision in those matters absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Id.
 {¶ 22} With respect to Defendant's right to present witnesses and evidence in his own defense, in State v. Denis (1997),117 Ohio App.3d 442, the court stated:
 {¶ 23} "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide that a criminal defendant shall have the right to compulsory process to procure the attendance of witnesses in his favor. In Washington v. Texas (1967),388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023, the United States Supreme Court described the right to compulsory process as follows:
 {¶ 24} "`The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. *Page 10 
This right is a fundamental element of due process of law.'
 {¶ 25} "In so holding, the court equated the right to compulsory process with the other Sixth Amendment rights applicable to the states.Id. The right to compulsory process, however, is not unlimited. InTaylor v. Illinois (1988), 484 U.S. 400, 410-411, 108 S.Ct. 646, 654,98 L.Ed.2d 798, 811-812, the court explained:
 {¶ 26} "`The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.'
 {¶ 27} "Accordingly, a defendant's right to present his own witnesses to establish a defense is prescribed by the rules of evidence."Id. at 445-446.
 {¶ 28} In this case the trial court excluded Defendant's proffered evidence about the victim's previous sexual activity with persons other than Defendant based in part upon the rape shield statue, R.C.2907.02(D), which provides:
 {¶ 29} "(D) Evidence of specific instances of the victim's *Page 11 
sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."
 {¶ 30} The legitimate State interests advanced by this statute include guarding the complainant's sexual privacy and protecting her from undue harassment, which discourages the tendency in sexual assault cases to try the victim rather than the defendant. Gardner at 17-18. Concomitantly, this law encourages the reporting of sexual assaults, thereby aiding crime prevention. Id. Finally, by excluding evidence that is unduly inflammatory and prejudicial, while being only marginally probative, this statute aids in the truth finding process. Id.
 {¶ 31} In determining whether the rape shield statute has been unconstitutionally applied, the court must balance the above legitimate interests of the State which the statute is designed to protect, against the probative value of the *Page 12 
excluded evidence. Gardner. The credibility of the victim was an important factor in establishing Defendant's guilt in this case. The victim's story was corroborated however by the seminal fluid stains on the bed sheets and the DNA evidence, which places Defendant in the location where the crime allegedly occurred and implies that he engaged in sexual conduct there.
 {¶ 32} Defendant sought to introduce evidence of the victim's previous sexual activity with persons other than Defendant in an attempt to impeach her credibility, specifically with respect to her claim that she was a virgin when she had sex with Defendant. While the evidence does have some slight relevance and probative value for that limited purpose, we note that in a prosecution under R.C. 2907.04(A), the key issue is whether Defendant engaged in sexual conduct with the minor-victim. It is irrelevant whether the victim was a virgin, whether she seduced Defendant, or whether she previously engaged in sexual conduct with other men. Those matters have marginal relevance and probative value at best, and only to the extent Defendant claims that if the victim is being untruthful about those matters, then her testimony about having sex with Defendant is also suspect.
 {¶ 33} In State v. Ferguson (1983), 5 Ohio St.3d 160, the *Page 13 
Supreme Court concluded that a defendant's confrontation rights did not mandate that he be allowed to delve into matters so tenuously connected with the truth of the victim's testimony on the key fact at issue. Here, that key fact in issue is simply whether Defendant engaged in sexual conduct with J.S. Ferguson held that the rape shield statute bars evidence of the victim's sexual activity with one other than the accused where the evidence does not involve the origin of semen, pregnancy, disease, or the victim's past sexual activity with the accused, the evidence is offered simply to impeach the credibility of the victim, and the evidence is not material to a fact at issue.Id., at 165. That is the case here. Thus, if the rape shield statute applies in this case, it would bar Defendant's proffered evidence about the victim's previous sexual activity with someone other than the accused. There is a fundamental flaw, however, in applying the rape shield statute in this case.
 {¶ 34} The rape shield statute, R.C. 2907.02(D), is found in the section of the Ohio Revised Code defining the offense of rape, R.C.2907.02. Identical language also appears in the Revised Code section defining the offense of gross sexual imposition, R.C. 2907.05(D). Further, both rape shield statutes are expressly limited to "evidence admitted under *Page 14 
this section," that is, to prove or defend against charges of rape or gross sexual imposition. The rape shield prohibition does not appear anywhere in R.C. 2907.04, which is the Revised Code section defining the offense with which Defendant was charged, unlawful sexual conduct with a minor. Applying the canon of statutory construction expressiounius, expression of one thing suggests the exclusion of others, and recognizing that criminal statutes are to be strictly construed against the State and liberally construed in favor of the accused, R.C.2901.04(A), we conclude that had the General Assembly intended for the rape shield language to be applicable to unlawful sexual conduct with a minor, it would have included that provision in R.C. 2907.04. It did not, and therefore we hold that R.C. 2907.02(D) does not apply to prosecutions for alleged violations of R.C. 2907.04(A). The trial court erred in applying R.C. 2907.02(D) to bar Defendant's evidence of the victim's previous sexual activity with persons other than Defendant. However, that does not end our inquiry.
 {¶ 35} In the exercise of its sound discretion, the trial court could, and in this case did, bar evidence of the victim's sexual activity with someone other than Defendant, in part, because the minimal relevance and probative value of that evidence to impeach the victim's credibility and her *Page 15 
claim that she was a virgin when Defendant had sex with her was substantially outweighed by the inflammatory character of that evidence and the danger of unfair prejudice. Evid.R. 403(A).
 {¶ 36} The evidence was offered to impeach the victim's credibility, and to that extent it has some relevance, but it has only marginal probative value in supporting Defendant's argument that if the victim is being untruthful about her previous sexual activity with others, her testimony about Defendant having sex with her is also suspect. The evidence has little or no value in demonstrating whether Defendant engaged in sexual conduct with the victim on the dates alleged, which is the key fact in issue in this case. On the other hand, the inflammatory character of the evidence and its potential to harass the victim and put her on trial is extant.
 {¶ 37} In balancing the State's interests against Defendant's right to confront his accuser and present evidence in his own defense, the trial court did not abuse its discretion, as that term is defined by law, in resolving that balance against admission of this unduly inflammatory and prejudicial evidence in accordance with Evid.R 403(A). This is precisely the type of evidence that would be barred under the rape shield statute, if it applied. *Page 16 
 {¶ 38} Defendant's assignments of error are overruled. The judgment of the trial court will be affirmed.
BROGAN, J. And FAIN, J., concur.