[Cite as *State v. Clark*, 2017-Ohio-4119.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

STATE OF OHIO,                )
                                     )
     PLAINTIFF-APPELLEE,      )
                                     )         CASE NO. 15 MA 0073
V.                              )
                                     )         OPINION
MAURICE CLARK,           )
                                     )
                                     )
     DEFENDANT-APPELLANT.   )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 2010 CR 354 |
| JUDGMENT: | Affirmed |
| APPEARANCES: For Plaintiff-Appellee | Paul Gains Prosecutor Ralph M. Rivera Assistant Prosecutor 21 W. Boardman St., 6th Floor Youngstown, Ohio 44503 |
| For Defendant-Appellant | Francisco E. Luttecke Assistant State Public Defender 250 East Broad St., Suite 1400 Columbus, Ohio 43215 |

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: June 2, 2017

DONOFRIO, J.

{¶1} Defendant-appellant, Maurice Clark, appeals from a Mahoning County Common Pleas Court judgment convicting him of rape, following a jury trial.

{¶2} Appellant and L.M. were co-workers who frequently carpooled to work, along with other co-workers, from Youngstown to their place of employment in Pennsylvania. They began carpooling in the summer of 2009.

{¶3} According to L.M. over a short course of time, appellant began to text and call her asking how she was doing and inquiring if she was dating anyone. L.M. conveyed to appellant that she was not interested in dating him. But according to L.M., appellant persisted in asking her out and contacted her multiple times a day by phone and text. One time, when L.M. fell asleep in the car on the way to work, she awoke to appellant touching her leg. L.M. told appellant to stop and that she did not like him in that way.

{¶4} Around the end of August 2009, L.M. decided to stop carpooling with appellant because she felt he was contacting her too much and interfering with her job. Soon thereafter, however, L.M. was injured at work and took a few days off. When she was able to return to work on September 13, 2009, L.M. rode with appellant because she was taking medication that affected her ability to drive.

{¶5} After appellant dropped L.M. off at home that night after 10:00 p.m., he began texting and calling her. At first, L.M. did not respond. L.M. needed to pick up another prescription medication that night, so she left her house to go to Walgreen's. But first she called appellant back to see what he wanted. L.M. stated that appellant was crying and told her he was depressed and needed to talk to her. So L.M. went to appellant's house, which he shared with his mother and daughter.

{¶6} When she arrived, close to midnight, appellant met her in the driveway and got into the passenger side of her vehicle. L.M. stated that appellant kept telling her how he needed to talk to her, but then he touched her breast. L.M. pushed his hand away and told him not to touch her. Appellant then asked L.M. to come into the house to talk. L.M. stated she would not go into the house. But she stated that appellant grabbed her arm and they walked into the garage, which was attached to

the house. L.M. did not enter the house. Appellant, however, went inside briefly while L.M. waited in the garage.

**{¶7}** L.M. stated that while she was standing in the garage, the lights went out inside the house. Then appellant came back out of the house and into the garage where he turned off the garage lights and locked the door. According to L.M., appellant pushed her up against the wall and began grabbing and touching her. He then threw her to the ground and removed her clothing. L.M. stated appellant pinned her down and raped her. She stated that she was crying and yelling at him to stop. She also tried to kick and punch him. L.M. stated that she heard a noise in the house. She stated appellant then finished assaulting her. She was then able to grab her clothes and run out of the garage.

**{¶8}** L.M. stated she got into her vehicle and appellant got in the passenger side. She told him to get out, which he did, but not before asking her if she was going to call the police. L.M. left appellant's house and drove to Walgreen's to pick up her prescription. L.M. then drove herself to the hospital where she reported that she had been raped.

**{¶9}** Appellant denied raping L.M. He admitted the two had sexual intercourse in his garage on the night in question but insisted it was consensual sex.

**{¶10}** A Mahoning County Grand Jury indicted appellant on two counts of rape, first-degree felonies in violation of R.C. 2907.02(A)(2)(B), and one count of kidnapping, a first-degree felony in violation of R.C. 2905.01(A)(4)(C).

**{¶11}** The matter proceeded to a jury trial. The jury found appellant guilty of one count of rape. It found him not guilty of the other rape count and of kidnapping.

**{¶12}** The trial court subsequently held a sentencing hearing. The court sentenced appellant to ten years in prison. The court also designated appellant as a Tier III sex offender.

**{¶13}** Appellant filed a timely notice of appeal on May 15, 2015. He now raises five assignments of error.

**{¶14}** Appellant's first assignment of error states:

MR. CLARK WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS, A FAIR TRIAL, AND TO PRESENT A DEFENSE TO THE STATE'S ACCUSATIONS WHEN THE TRIAL COURT EXCLUDED PORTIONS OF A DEFENSE WITNESS'S TESTIMONY.

{¶15} Appellant contends the trial court erred in excluding part of defense witness Eugene Tensley's testimony. He contends the rape shield law allows testimony regarding a past sexual relationship between him and L.M. Appellant claims Tensley's testimony would have directly refuted the state's position that the relationship between appellant and L.M. was that of appellant constantly pursuing L.M. and L.M. constantly rejecting him. Appellant contends that the excluded testimony supported the possibility that there was a mutual relationship where consent was possible.

{¶16} A trial court has broad discretion in determining whether to admit or exclude evidence. *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (8th Dist.1996). Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶17} Appellant's counsel stated that he wished to present Tensley's testimony that, on a date prior to the alleged rape, Tensley witnessed appellant kissing and fondling L.M. (Tr. 449). Counsel gave his reason for wishing to present this testimony: "And the sexual activity has nothing to do with her prior sexual activity as such. It has to do with her disagreeing that that ever occurred between her and the defendant. *It goes to the issue of credibility*, not sexual activity." (Tr. 447; Emphasis added). The trial court allowed Tensley to testify. (Tr. 448). But it ruled his testimony could not have anything to do with sexual activity. (Tr. 449).

{¶18} The rape shield law provides in relevant part:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence

of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

R.C. 2907.02(D).

{¶19} In determining whether the rape shield law has been unconstitutionally applied in a particular case, the court must balance the state's interests, which the statute is designed to protect, against the probative value of the excluded evidence. *State v. Stoffer*, 7th Dist. No. 09-CO-1, 2011-Ohio-5133, ¶ 91, citing *State v. Gardner*, 59 Ohio St.2d 14, 17, 391 N.E.2d 337 (1979).

{¶20} One of the enumerated exceptions to the rape shield law seems to apply – Tensley's testimony allegedly would have been of L.M.'s past sexual activity (kissing and fondling, not actual sexual intercourse) with appellant. But even if one of the enumerated exceptions applies, introduction of the evidence is only permitted if the court finds the evidence is material to a fact at issue and that its prejudicial nature does not outweigh its probative value. *State v. Minton*, 4th Dist. No. 15CA1006, 2016-Ohio-5427, ¶ 30; R.C. 2907.02(D).

{¶21} And even more importantly, if the contested evidence is merely being used to impeach the victim's credibility, it is not of probative value as to the alleged rape itself and it should not be admitted. *State v. Kaufman*, 187 Ohio App.3d 50, 2010-Ohio-1536, 931 N.E.2d 143, ¶ 89 (7th Dist.), citing *State v. Williams*, 21 Ohio St.3d 33, 36, 487 N.E.2d 560 (1986). Stated differently, when the contested evidence is submitted only to impeach the victim's credibility, such evidence is prohibited by the rape shield law. *Id.*, citing *State v. Ferguson*, 5 Ohio St.3d 160, 450 N.E.2d 265 (1983), paragraph two of the syllabus. See also, *State v. Ector*, 6th Dist. No. L-07-1169, 2009-Ohio-515, ¶ 21, citing *State v. Gardner*, 59 Ohio St.2d 14, 391 N.E.2d 337 (1979) ("Evidence of sexual activity offered merely to impeach the

credibility of the witness is not material to a fact at issue in the case and must be excluded.")

**{¶22}** In this case, appellant's counsel admitted that the only reason he wanted to present Tensley's testimony that he saw appellant kissing and fondling L.M. was to impeach L.M.'s credibility. The case law makes clear that impeachment is not an acceptable reason under the rape shield law to permit evidence of the victim's past sexual activity. It is not material to the fact at issue, that being whether appellant raped L.M. on September 14, 2009. Therefore, the trial court did not abuse its discretion in ruling that Tensley could not testify as to any sexual activity he may have observed between appellant and L.M. in the past.

**{¶23}** Accordingly, appellant's first assignment of error is without merit and is hereby overruled.

**{¶24}** Appellant's second assignment of error states:

THE TRIAL COURT DENIED MR. CLARK HIS FEDERAL AND STATE RIGHTS TO A FAIR TRIAL AND DUE PROCESS OF LAW WHEN IT IMPROPERLY INSTRUCTED THE JURY BY MISSTATING THE STATE'S BURDEN OF PROOF WITH REGARDS TO THE ELEMENT OF FORCE.

**{¶25}** Regarding the element of force, the trial court instructed the jury:

Force means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. If the state proves beyond a reasonable doubt that the defendant overcame the victim's will by fear or duress, you may infer from those facts and [sic] element of force.

(Tr. 529).

**{¶26}** Appellant contends in this assignment of error that the second sentence in the above instruction relates to force by a parent or authority figure and does not

apply in a case such as this. Appellant further asserts the second sentence is inapplicable when the victim is an adult. He claims this erroneous instruction was particularly prejudicial in this case where the jury found him not guilty on the other two charges.

**{¶27}** Appellant failed to object to this jury instruction at trial. Thus, he has waived all but plain error.

**{¶28}** Plain error is one in which but for the error, the outcome of the trial would have been different. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial would have clearly been different. *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 56, citing *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus.

**{¶29}** Appellant was convicted of rape in violation of R.C. 2907.02(A)(2), which provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force *or threat of force*." (Emphasis added.)

**{¶30}** In support of its position that the jury instruction here was proper, the state relies on our decision in *State v. Rupp*, 7th Dist. No. 05 MA 166, 2007-Ohio-1561. In *Rupp*, the defendant was convicted of raping an adult victim. Over the defendant's objection at trial, the court instructed the jury on the statutory definition of force and then added, "[i]f the state proves beyond a reasonable doubt that the defendant overcame the victim's will by fear or duress, you may infer from those facts the element of force." *Id.* at ¶ 24. On appeal, the defendant argued the additional force instruction was only proper in cases where the defendant occupied a position of authority over a child or other susceptible party. *Id.* He argued it was inapplicable to cases involving an adult victim and the instruction relieved the state of its burden of proving the element of force or threat of force. *Id.*

**{¶31}** In considering the defendant's arguments, this court noted:

> Appellant's argument fails to distinguish between the finding of

force or threat of force for cases of children raped by those in authority positions due to fear of discipline and the mere ability of a jury to infer a threat of force in all cases where the victim's will is overcome by fear or duress even where no express, direct threat of force is made. That is, in the case of a young child and a parent, the state need not even prove the victim's will was overcome by fear or duress. Rather, such fact can be presumed.

Conversely, in other types of rape cases, the state must prove force or threat of force either through direct evidence of such or by inference where the defendant overcame the victim's will by fear and duress. Thus, if the defendant created the belief that physical force will be used in the absence of submission, then threat of force can be inferred. Nothing in the rape statute requires the threat of force to be direct or express. Thus, threat of force includes both explicit and implicit threats.

*Id.* at ¶ 32-33. We then upheld the jury instruction "as an accurate statement of the law regarding force or threat of force." *Id.* at ¶ 43.

{¶32} In the case at bar, the "threat of force" instruction is identical to that in *Rupp*. And both *Rupp* and this case involve an adult victim. Moreover, in *Rupp*, the defendant objected to the instruction at trial and we still upheld it as an accurate statement of the law. Here appellant did not object to it, leaving us only with a plain error review. Given our findings in *Rupp*, we cannot conclude that the trial court erred in instructing the jury on the threat of force as part of its definition of the element of force.

{¶33} Accordingly, appellant's second assignment of error is without merit and is hereby overruled.

{¶34} Appellant's third assignment of error states:

MR. CLARK'S RIGHT TO CONFRONT WITNESSES, TO A

FAIR TRIAL, AND DUE PROCESS WERE VIOLATED WHEN THE STATE PRESENTED TESTIMONY FROM A SANE NURSE DIFFERENT THAN THE ONE WHO EXAMINED [L.M.].

**{¶35}** Appellant asserts that his right to confront witnesses against him was violated when the state presented testimony from a different SANE nurse than the one who examined L.M. Appellant claims that the state presented Lynn Bilal Hines, who testified as to her examination of L.M. But appellant argues that Lynn Bilal Hines was not the nurse who actually examined L.M. Instead, he states that Lynn Veal was the nurse who examined L.M. To allow another nurse to testify as to the examination conducted by Lynn Veal, appellant argues, was inadmissible hearsay and violated his right to cross examine the witness against him.

**{¶36}** Appellant filed his brief in this appeal on April 21, 2016. On August 12, 2016, the court reporter filed a "corrected transcript" of appellant's trial. The corrected transcript contains a signed errata sheet from the court reporter stating:

> Upon further review of the transcript of proceedings in the above-captioned case, the transcript needs to be corrected due to an error in transcription. The SANE nurse identified in the transcript as Ms. Lynn Bilal Hines should be corrected to read Ms. Lynn Veal Hines.

(Corrected Transcript). The errata sheet then lists all of the pages where the misidentification occurred.

**{¶37}** Additionally, the record reflects that it was Lynn Veal who was subpoenaed to testify, not Lynn Bilal Hines.

**{¶38}** Thus, the correct nurse who examined L.M. was the one who testified at appellant's trial.

**{¶39}** Accordingly, appellant's third assignment of error is without merit and is hereby overruled.

**{¶40}** Appellant's fourth assignment of error states:

TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF MR. CLARK'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16, OF THE OHIO CONSTITUTION.

**{¶41}** Here appellant argues his trial counsel was ineffective because he failed to either proffer Tensley's testimony or request an in-camera review of his testimony, failed to realize the nurse who testified was not the nurse who examined L.M., and failed to object to the jury instruction on force.

**{¶42}** To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

**{¶43}** Appellant bears the burden of proof on the issue of counsel's ineffectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

**{¶44}** Appellant first contends his trial counsel was ineffective for failing to proffer Tensley's testimony or request an in-camera review of his testimony. As discussed in appellant's first assignment of error, however, appellant's counsel stated on the record that, given the opportunity to do so, Tensley would testify that he had witnessed appellant kissing and fondling L.M. (Tr. 449). Moreover, counsel stated that he only wanted to use Tensley's testimony to impeach L.M., which as we found above, is not permitted under the rape shield law. Thus, there is nothing to indicate that counsel was ineffective in this regard.

**{¶45}** Appellant next contends his counsel was ineffective for failing to realize that the nurse who testified was not the nurse who examined L.M. But as discussed in appellant's third assignment of error, this misconception on appellate counsel's part was due to a typographical error by the court reporter, which has since been cleared up. The nurse who testified was the nurse who examined L.M.

**{¶46}** Finally, appellant contends his counsel was ineffective for failing to object to the jury instruction on force. But as discussed in appellant's second assignment of error, this instruction was a correct statement of the law and it is applicable in adult-victim cases.

**{¶47}** Based on the above, we cannot conclude that appellant's trial counsel was ineffective.

**{¶48}** Accordingly, appellant's fourth assignment of error is without merit and is hereby overruled.

**{¶49}** Appellant's fifth assignment of error states:

THE TRIAL COURT VIOLATED MAURICE CLARK'S RIGHT TO DUE PROCESS AND A FAIR TRIAL THROUGH CUMULATIVE ERROR.

**{¶50}** In his final assignment of error, appellant contends the cumulative effect of the errors discussed in his previous assignments of error warrant a reversal of his conviction.

**{¶51}** An appellate court may reverse a defendant's conviction based on the doctrine of cumulative error. Cumulative error occurs when errors deemed separately harmless deny the defendant a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

**{¶52}** As discussed above, none of appellant's assignments of error have merit or have raised a harmless error. There is no evidence that appellant was denied a fair trial. Thus, there was no cumulative error.

**{¶53}** Accordingly, appellant's fifth assignment of error is without merit and is

hereby overruled.

{¶54} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.