[Cite as *State v. Sharier*, 2019-Ohio-3533.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

| STATE OF OHIO | C.A. No. 18AP0015 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| STVEN B. SHARIER | COURT OF COMMON PLEAS COUNTY OF WAYNE, OHIO |
| Appellant | CASE No. 2017 CRC-I 000042 |

DECISION AND JOURNAL ENTRY

Dated: September 3, 2019

CALLAHAN, Presiding Judge.

{¶1} Appellant, Steven Sharier, appeals his conviction by the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2} On August 29, 2016, M.W. found an undated note in her teenage stepdaughter's bedroom that seemed to indicate that she had a romantic interest in a man named Steve. M.W. learned that "Steve" probably referred to an adult friend of her stepdaughter's mother. She then confronted her stepdaughter, K.W., about the contents of the note. K.W. denied that she had been sexually involved with the man to whom the note referred. A few days later, however, K.W. left a note for her stepmother in which she apologized for lying and admitted that she had gone to the home of a man named Steve during school hours and stated that "he made [her] have sex with him."

{¶3}   M.W. immediately pulled K.W. from school and drove her to the Wayne County Sheriff's Office.  K.W. gave a statement to Lieutenant Ryan Koster, who used computer records to identify Mr. Sharier as the suspect.  Lieutenant Koster also referred K.W. to the Wayne County Child Advocacy Center for a forensic interview, which was conducted on September 13, 2016.  In the next month, K.W. placed a controlled, recorded telephone call to Mr. Sharier after initiating contact with him through a series of text messages.  Mr. Sharier was interviewed by a detective in January 2017, and shortly thereafter was charged with unlawful sexual contact with a minor in violation of R.C. 2907.04(A).

{¶4}   The State filed a motion in limine to exclude any extrinsic evidence related to prior accusations of sexual abuse made by K.W. against another individual under Evid.R. 608(B).  The trial court conducted a hearing on the motion and excluded all such evidence, but did so based on application of *State v. Boggs*, 63 Ohio St.3d 418 (1992).  The case proceeded to a jury trial that resulted in a verdict of guilty, and the trial court sentenced Mr. Sharier to five years in prison.  He then filed this appeal.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED [BY] NOT DISMISSING THE INDICTMENT
BASED ON INSUFFICIENT EVIDENCE.

{¶5}   In his first assignment of error, Mr. Sharier urges this Court to articulate a heightened standard of review to assess the sufficiency of the evidence.  This Court declines to do so.

{¶6}   The due process secured by the Fourteenth Amendment to the United States Constitution guarantees "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a

reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). In applying this standard, courts do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

{¶7} Mr. Sharier has not argued that the evidence at trial failed to meet this standard. Instead, he urges this Court to adopt a heightened measure of sufficiency because of the "sensitive, emotional, and now political nature" of sex offenses. The existing standard, however, comports with due process and is applied in cases of all kinds. *See*, *e.g.*, *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, ¶ 132 (aggravated murder with death penalty specifications); *State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, ¶ 165, 177-181 (rape); *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 15-20 (gross sexual imposition and kidnapping). This same standard is consistently applied when a defendant is convicted of unlawful sexual conduct with a minor. *State v. Shank*, 9th Dist. Medina No. 12CA0104-M, 2013-Ohio-5368, ¶ 21-25; *State v. Watson*, 9th Dist. Summit No. 25915, 2012-Ohio-1624, ¶ 5-7.

{¶8} This Court declines to depart from the standard of sufficiency set forth in *Jackson* and *Jenks*. Mr. Sharier's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY NOT ALLOWING THE JURY TO KNOW ABOUT THE ALLEGED VICTIM'S PAST UNSUBSTANTIATED SEXUAL ABUSE ALLEGATIONS THAT SHE ADMITTED WERE FALSE.

{¶9} Mr. Sharier's second assignment of error argues that the trial court erred by excluding extrinsic evidence related to a prior allegation of sexual abuse that K.W. made against a family member under the rape shield law. Mr. Sharier did not object in the trial court on this basis, as he acknowledges, so he has forfeited all but plain error for purposes of appeal. *See* Crim.R. 52(B).

{¶10} Crim.R. 52(B) permits this Court to notice plain errors or defects that affected a substantial right in the absence of an objection in the trial court. This Court can only notice plain error when there has been a deviation from a legal rule that constitutes an obvious defect in the trial proceedings that affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). This Court notices plain error only in exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶11} R.C. 2907.02(D), which sets forth Ohio's rape shield law, provides:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

*See also* R.C. 2907.05(E) (setting forth the rape shield law in the context of the offense of gross sexual imposition). The rape shield law "render[s] inadmissible evidence of the rape victim's sexual activity with one other than the accused where the evidence: does not involve the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender; is offered simply to impeach the credibility of the victim; and is not material to a fact at issue in the case." *State v. Ferguson*, 5 Ohio St.3d 160 (1983), paragraph two of the syllabus.

{¶12} When during cross-examination a victim admits to making a prior false rape accusation, the trial court must conduct an *in camera* hearing to determine whether the rape shield law prohibits further inquiry. *Boggs*, 63 Ohio St.3d 418 at paragraph two of the syllabus. If the trial court determines that sexual activity was not involved in the prior false accusation, the trial court has the discretion to permit inquiry under Evid.R. 608(B). *Id.* at paragraphs one and two of the syllabus. "[U]nder no circumstances would the defense be permitted to introduce

extrinsic evidence." *Id*. at 422, citing Evid.R. 608(B). As the State concedes, however, the rape shield law does not apply to allegations of unlawful sexual conduct with a minor. *See State v. Smiddy*, 2d Dist. Clark No. 06CA0028, 2007-Ohio-1342, ¶ 34 (concluding that "had the General Assembly intended for the rape shield language to be applicable to unlawful sexual conduct with a minor, it would have included that provision in R.C. 2907.04."). To the extent that the trial court based its decision to exclude the evidence at issue under the rape shield law, that decision was in error.

{¶13} This Court may only notice plain error when, "but for the error, the outcome of the trial clearly would have been otherwise." *Long*, 53 Ohio St.2d 91 at paragraph two of the syllabus. In this case, Mr. Sharier has not demonstrated that the result would have been different had the trial court not applied the rape shield statute. To the extent that Mr. Sharier complains that the trial court excluded the fact that K.W. is alleged to have made a prior false accusation of sexual assault, this Court notes that he testified to this effect during his direct examination without objection. When defense counsel inquired about Mr. Sharier's conduct during the controlled telephone call placed by K.W., he testified as follows:

> Q:    What else made you suspect it was a controlled call?
>
> A.    Well, I mean, after my wife had asked me if I knew of any charges being dismissed against me or unsubstantiated, of course, it's lingering in the back of my head and then, randomly, out of the blue, I'm receiving text messages and now a call?
>
> Q:    Okay.
>
> A:    She was also very vehement in asking sexual related [*sic*] questions which, obviously put me on guard and then made me recall that she had previously gotten someone else in trouble on the same regard.

Mr. Sharier's own testimony, therefore, placed the allegation that K.W. had "previously gotten someone else in trouble" for a sex offense before the jury. In addition, Mr. Sharier referenced

prior allegations against several individuals during a recorded interview with Detective Alex Abel that was played during trial and admitted into evidence. Given that the previous accusations alleged to have been made by K.W. were before the jury, this Court cannot conclude that the result of the trial would have been different had the trial court ruled otherwise.

{¶14} To the extent that Mr. Sharier argues that the trial court incorrectly excluded extrinsic evidence related to the allegation, he also has not demonstrated that the result of the trial would have been different but for reliance on the rape shield law. Although Evid.R. 608(A) permits the introduction of opinion or reputation evidence related to a witness's character for untruthfulness, Evid.R. 608(B) provides that "[s]pecific instances of the conduct of a witness, for the purposes of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence." *See also State v. Kamel*, 12 Ohio St.3d 306 (1984), paragraph two of the syllabus ("[A] witness'[s] credibility may not be impeached by extrinsic proof of specific instances of his conduct. Such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B)."). Prior allegations of sexual assault "are an entirely collateral matter which may not be proved by extrinsic evidence." *Boggs* at 422, citing *Kamel* at paragraph two of the syllabus.

{¶15} Mr. Sharier maintains that the trial court should have permitted him to introduce "the children's services records, social worker testimony, and perhaps testimony from [the prior accused] and any other family members" because the prior accusation "was probative as to whether she was telling the truth about Sharier." Even without applying the rape shield statute, however, that extrinsic evidence could not have been admitted as evidence of K.W.'s character for untruthfulness. *See* Evid.R. 608(B); *Boggs* at 422.

{¶16} Mr. Sharier has not demonstrated that the outcome of his trial would have been different if the trial court had not relied on the rape shield law. This Court, therefore, cannot notice plain error in this case. Mr. Sharier's second assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT ERRED BY IMPOSING THE MAXIMUM PRISON SENTENCE.

{¶17} In his final assignment of error, Mr. Sharier argues that the trial court should not have imposed the maximum sentence. This Court disagrees.

{¶18} This Court may modify or vacate a felony sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. With respect to maximum sentences, a trial court has "full discretion to impose a prison sentence within the statutory range" and is "no longer required to make findings or give * * * reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus.[1]

{¶19} "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). Trial courts have discretion in fashioning felony sentences with consideration for the factors provided in R.C. 2929.12(B)-(F). R.C. 2929.12(A). "R.C. 2929.12(B) includes factors that suggest that the offense is more

---

[1] The Reagan Tokes Law, Am.Sub.S.B. No. 201, 2018 Ohio Laws 157, effective March 22, 2019, made substantive amendments to Ohio's felony sentencing statutes with respect to felonies of the first and second degree committed after the effective date of the amendments. Those changes are not at issue in this appeal.

serious. R.C. 2929.12(C) includes factors suggesting the offense is less serious. The recidivism factors—factors indicating an offender is more or less likely to commit future crimes—are set forth in R.C. 2929.12(D) and (E)." *State v. Thrasher*, 9th Dist. Summit No. 27547, 2015-Ohio-2504, ¶ 5.

{¶20} Mr. Sharier does not dispute that his sentence is within the permissible range for unlawful sexual conduct with a minor, which is a third-degree felony. *See* R.C. 2907.04(B)(3). Instead, he has argued that the record does not support the sentence that the trial court imposed.

{¶21} R.C. 2929.12(B), in relevant part, provides that the following factors indicate that an offender's conduct is "more serious than conduct normally constituting the offense":

> (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
>
> (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
>
> * * * [and]
>
> (6) The offender's relationship with the victim facilitated the offense.

Although the trial court did not utilize a presentence investigation, the trial court considered the evidence at trial in addition to victim impact statements from K.W. and her father and stepmother. In imposing the maximum sentence of sixty months in prison, the trial court noted the psychological harm done to K.W., her tender age, her vulnerability given the instability of her relationship with her mother, and the fact that Mr. Sharier took advantage of that situation in the commission of the offense. The record supports the trial court's exercise of its discretion to impose the maximum sentence in this case. *See Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, at paragraph three of the syllabus.

{¶22} Mr. Sharier's third assignment of error is overruled.

III.

**{¶23}** Mr. Sharier's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, J.
CONCURS.

CARR, J.
DISSENTING.

{¶24} I respectfully dissent from the majority's resolution of Sharier's second assignment of error. First, I question the majority's application of the plain error standard in light of Sharier's objection to the trial court's decision during the in camera hearing. Irrespective, I cannot conclude that the error in prohibiting the cross-examination of K.W. about sexual abuse allegations she made against her sibling and later retracted did not warrant reversal. Credibility played a pivotal role in this case. Essentially, the case turned on whether the jury believed K.W.'s or Sharier's testimony. There was no physical evidence or corroborating witnesses to verify either person's whereabouts at the relevant time.

{¶25} As a basis to conclude the error did not warrant reversal, the majority points to comments by Sharier during his recorded interview with police and the controlled phone call which indicate that K.W. previously accused other people of wrongdoing and got them in trouble. However, nothing in those comments would lead the jury to suspect that K.W. may have made false accusations or later retracted her allegations. Thus, those comments would not cause the jury to question K.W.'s truthfulness.

{¶26} Moreover, what the jury knew of the alleged abuse of K.W. by her sibling would also not have caused the jury to question K.W.'s truthfulness. K.W. testified that she had never claimed to have engaged in sexual activity with someone when it did not happen. Further, the jury saw a note that indicated K.W.'s sibling molested her and heard K.W.'s stepmother testify that, as far as she knew, charges were still pending against the sibling. Thus, the evidence about the alleged abuse would not have called K.W.'s truthfulness into question.

{¶27} If Sharier had been permitted to cross-examine K.W. about the alleged abuse by her sibling, the jury likely would have heard that K.W. had retracted her allegations. While the

jury also would have likely heard K.W. assert that she was pressured to recant and that the allegations were true, the jury should have been able to hear and evaluate that evidence, particularly given the importance of credibility in this case.

{¶28} Because I cannot conclude that the error in prohibiting the cross-examination of K.W. about these allegations did not warrant reversal, I respectfully dissent from the judgment of the majority.

APPEARANCES:

DAVID V. GEDROCK, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.